**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

RECEIVED

2022 APR 21 A 4 19

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| **JENNIFER JONES; BRITTNEY WALKER; and TIFFANY WILLIAMS** | |
| Plaintiffs, | ) |
| | ) |
| | ) |
| v. | ) **CIVIL ACTION NO.** |
| | ) **2:22-cv-194** |
| **ARC OF EASTERN ELMORE COUNTY,** | ) |
| | ) **JURY TRIAL DEMANDED** |
| | ) |
| Defendant. | ) |

**COMPLAINT**

**STATEMENT OF JURISDICTION**

1.     The jurisdiction of this Court is invoked pursuant to its general original jurisdiction and under other statutory authority. This is a suit authorized and instituted pursuant to 42 U.S.C. § 12101, et seq., known as Title I of the Americans with Disabilities Act (ADA); 42 U.S.C. § 2000e, et seq, known as Title VII of the Civil Rights Act of 1964, as amended ("Title VII"); and 42 U.S.C. § 1981.

2.     This Court has original jurisdiction, pursuant to 28 U.S.C. § 1331, as this civil action arises under the laws of the United States cited above. This Court also has original jurisdiction, pursuant to 28 U.S.C. § 1343(a); as this civil action seeks to secure the protection of, and redress the deprivation of, rights secured by the ADA, Title VII and § 1981, providing for injunctive and other relief against discrimination.

3.     Venue is proper in this district, pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claim occurred in Elmore County located in this judicial district.

1

4.      Plaintiffs have fulfilled all conditions precedent to the institution of this action, as required under the applicable laws. Specifically, each of the Plaintiffs filed EEOC charges and received their notices of rights to sue prior to the filing of this lawsuit.  Additionally, each of the Plaintiffs' charges investigated by the EEOC "determined there is reasonable cause to believe" discrimination had taken place. (See Exhs. 1-3, attached herewith).

## STATEMENT OF THE PARTIES

5.      Plaintiff Jennifer Jones (hereinafter referred to as "Plaintiff" or "Jones") is an African-American female over the age of nineteen (19) years. At all times relevant to this Complaint, Plaintiff Jones was a resident of the State of Alabama and a full-time employee of the named defendant. Plaintiff Jones is a qualified individual under the ADA in that she was "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

6.      Plaintiff Brittney Walker (hereinafter referred to as "Plaintiff" or "Walker") is an African-American female over the age of nineteen (19) years. At all times relevant to this Complaint, Plaintiff Walker was a resident of the State of Alabama and a full-time employee of the named defendant. Plaintiff Walker is a qualified individual under the ADA in that she was "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

7.      Plaintiff Tiffany Williams (hereinafter referred to as "Plaintiff" or "Williams") is an African-American female over the age of nineteen (19) years. At all times relevant to this Complaint, Plaintiff Williams was a resident of the State of Alabama and a full-time employee of the named defendant. Plaintiff Williams is a qualified individual under the ADA in that she was

"an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

8.      Defendant Arc of Eastern Elmore County (hereinafter "Defendant" or "the Arc") is an entity subject to suit under the ADA, Title VII, and 42 U.S.C. § 1981. At all times relevant herein, Defendant was Plaintiffs' employer.

## STATEMENT OF THE FACTS

### PLAINTIFF JENNIFER JONES

9.      Plaintiff Jones re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set forth herein and further states as follows:

10.     Plaintiff Jones began working for the Arc in or near 2001, making her one of the most senior employees in terms of duration of service.

11.     Due to her hard work and dedication to the company, Plaintiff Jones became the only black supervisor in administration. More specifically, her job title was Dayhab Coordinator, the responsibilities of which consisted of supervising approximately 18 employees.

12.     In or near March, 2020, the Arc began announcing temporary layoffs of employees. Plaintiff Jones was made aware that the laid off individuals would remain on the Arc's employee list and that the Arc would continue to pay the individuals their employee benefits.

13.     Towards the end of March after the non-supervisory employees were laid off, the Arc informed Plaintiff Jones that she was laid off as well.

14.     Plaintiff Jones was shocked because she was the only supervisory employee the Arc chose to lay off. In fact, her white counterparts were not laid off and were able to continue working.

3

15.    It was not until on or around October 1, 2020, that the Arc called Plaintiff Jones to its administration offices and informed her that they would be recalling the temporarily laid off employees. Sadly, however, the Arc let Plaintiff Jones know that she would be demoted and stripped of her supervisory authority and title, as her position was going to be eliminated.

16.    As if that wasn't humiliating enough, the Arc further told Plaintiff Jones that she had to begin reporting to a white female, with whom several black employees have had serious issues.

17.    Plaintiff Jones explained to the Arc that she believed it was wrong for them to demote her and proceeded to ask if she was the only supervisor being treated this way. Moreover, she reminded the Arc that she has experienced serious health issues that caused heart attacks in the past and that, as a result, she could not be in a stressful environment.

18.    Although she believed the Arc's adverse actions to be discriminatory, Plaintiff Jones was still reluctantly willing to work because she desperately needed her job. Consequently, she asked the Arc whether she could be accommodated for her health risks by being placed in a different position away from that particular white female supervisor.

19.    To her dismay, the Arc denied Plaintiff Jones' reasonable requests for a simple accommodation and told her that there was no other option for her. To make matters worse, the Arc then callously informed her that she was terminated due to her refusal to accept the demotion she was offered.

20.    After Plaintiff Jones was terminated, she was made aware that her former supervisory position was in fact not eliminated and that the Arc actually gave her position to a lesser qualified man who was her assistant.

4

21. The real reasons for Plaintiff Jones' initial lay off and ultimate termination were her race, disability, and gender. Additionally, her termination was in retaliation for questioning whether she was the only supervisor being treated this way and for reminding the Arc of her health issues and seeking accommodations in the form of a simple transfer—an accommodation that would not have caused the Arc to suffer undue hardship had it been granted. However, Plaintiff Jones never received any accommodations and instead was terminated after she engaged in protected activity.

PLAINTIFF BRITTNEY WALKER

22. Plaintiff Walker re-alleges and incorporates by reference paragraphs 1-8 with the same force and effect as if fully set forth herein and further states as follows:

23. Plaintiff Walker began working for the Arc in or near 2018, as a Certified Training Specialist ("CTS").

24. In or near 2019, Plaintiff Walker made the Arc aware of a circulatory health issue she was diagnosed with and even had a surgical procedure concerning it that same year. The condition caused heavy bleeding that affected major life activities, including the normal flow of Plaintiff Walker's circulatory system. However, she was still qualified to perform the essential functions of her job with or without reasonable accommodation.

25. In or near March, 2020, the Arc informed Plaintiff Walker that she would be temporarily laid off due to the pandemic; however, she would remain on the Arc's employee list and that the Arc would continue to pay her benefits. Plaintiff Walker was relieved to know that her benefits would still be in effect, given her serious health condition.

26. In or near September, 2020, Plaintiff Walker was made aware that her circulatory condition required her to have another surgery. At this time, the laid off employees had not yet

been recalled to work yet so the temporary layoff was still in effect for them, including Plaintiff Walker. However, Plaintiff Walker still immediately reached out to the Arc to inform them of the procedure and to let them know that she would need to be out for approximately six (6) weeks per her doctor's orders, in the event that she would be recalled during that time period. Immediately after hearing about her surgery and need for medical leave, if she was recalled, Arc supervisor, Alanna, informed Plaintiff Walker that she would be receiving a letter in the mail.

27.    A week or two later, Plaintiff Walker received that mailed letter—it was a letter terminating her employment. Unsurprisingly, Plaintiff Walker was shocked, especially that this happened immediately after she made the Arc aware of her medical needs.

28.    The real reason for Plaintiff Walker's termination was her disability and need for medical leave. Additionally, it was in retaliation for disclosing her disability and seeking accommodations in the form of recovery time pursuant to her doctor's orders—an accommodation that would not have caused the Arc to suffer undue hardship had it been granted. However, Plaintiff Walker never received any accommodations and instead was terminated after she engaged in protected activity.

## PLAINTIFF TIFFANY WILLIAMS

29.    Plaintiff Williams re-alleges and incorporates by reference paragraphs 1-8 with the same force and effect as if fully set forth herein and further states as follows:

30.    Plaintiff Williams began working for the Arc in or near August, 2019, as a Certified Training Specialist ("CTS").

31.    Immediately upon beginning her employment, Plaintiff Williams made the Arc aware that she was severely diabetic and would need time off every now and then to go to doctor's appointments related to my condition.

32.     In or near March, 2020, the Arc informed Plaintiff Williams that she would be temporarily laid off due to the pandemic; however, she would remain on the Arc's employee list and that the Arc would continue to pay her benefits. Plaintiff Williams was relieved to know that her benefits would still be in effect, given her serious health condition.

33.     In or near August, 2020, Plaintiff Williams began experiencing serious episodes of flare-ups related to her diabetes. During this time, she was still on temporary layoff so she applied for short-term disability based on her condition—which was approved.

34.     In or near early October, 2020, Plaintiff Williams' flare-ups were increasing in frequency and intensity. As such, her medical provider advised her that she needed to be away from work until around November 17, 2020. Consequently, Plaintiff Williams requested FMLA paperwork from the Arc related to her diabetes in case she was recalled to work before November 17th.

35.     However, just three (3) days after making a request for FMLA, Plaintiff Williams was terminated from the Arc—at the time, none of the laid off employees had even been recalled to work.

36.     The real reason for Plaintiff Williams' termination was her disability and need for medical leave. Additionally, it was in retaliation for disclosing her disability (diabetes) and seeking accommodations in the form of time off and/or FMLA leave pursuant to her doctor's orders—an accommodation that would not have caused the Arc to suffer undue hardship had it been granted. However, Plaintiff Williams never received any accommodations and instead was terminated after she engaged in protected activity.

**FIRST CAUSE OF ACTION**
**Racial Discrimination**
**as to Plaintiff Jennifer Jones**
**under 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981**

7

37. Plaintiff Jones re-alleges and incorporates by reference paragraph nos. 9-21 with the same force and effect as if fully set forth herein and further states as follows:

` 38. Plaintiff Jones is an African-American female.

39. Plaintiff Jones has been discriminated against and treated less favorably than similarly-situated white employees because of her race.

40. More specifically, the Arc discriminated against Plaintiff Jones by laying her off but allowing her white counterparts to continue to work.

41. Further, when offered a demotion, the Arc wanted to force Plaintiff Jones to report to a white female with whom several other black employees have had serious issues.

42. The acts discussed throughout this Complaint affected the terms, conditions and/or privileges of Plaintiff Jones's employment when she was the only supervisor laid off, then demoted and faced with the reality that she would have to answer to a problematic supervisor.

43. Defendant, through the conduct of its agents, has violated Plaintiff Jones' rights under Title VII and Section 1981.

44. As a result of Defendant's actions, Plaintiff Jones has suffered harm, including but not limited to, loss of employment opportunities, compensation and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including stress, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

**SECOND CAUSE OF ACTION**
**Retaliation Based on Race**
**as to Plaintiff Jennifer Jones**
**under 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981**

45. Plaintiff Jones re-alleges and incorporates by reference paragraph nos. 9-21 with the same force and effect as if fully set forth herein and further states as follows:

8

46.    Plaintiff Jones experienced and witnessed race discrimination when she, being the sole black supervisor, was the only supervisor laid off.

47.    Moreover, when Plaintiff Jones found out that she could only return to work if she received a demotion, she explained that she felt their actions were wrong and wanted to know if she was the only supervisor being treated this way. However, nothing was done to remediate her concerns. To the contrary, the Arc informed Plaintiff Jones that she had to either take this demotion or leave the Arc.

48.    Defendant, through the conduct of its agents, has violated Plaintiff Jones' rights under Title VII and Section 1981.

49.    As a result of Defendant's actions, Plaintiff Jones has suffered harm including, but not limited to, loss of employment opportunities, denial of wages, compensation and other benefits and conditions of employment, as well as other monetary damages. Additionally, Plaintiff Jones has suffered injury including pain, humiliation, mental anguish and suffering, and loss of enjoyment of life.

**THIRD CAUSE OF ACTION**
**Gender Discrimination**
**as to Plaintiff Jennifer Jones**
**under 42 U.S.C. § 2000e, et seq.**

50.    Plaintiff Jones re-alleges and incorporates by reference paragraph nos. 9-21 with the same force and effect as if fully set forth herein and further states as follows:

51.    Plaintiff Jones is an African-American female.

52.    Plaintiff Jones has been discriminated against and treated less favorably than similarly-situated male employees because of her gender.

53.    More specifically, after informing Plaintiff Jones that her supervisory position was eliminated, Plaintiff Jones was in fact made aware that this was untrue. Rather, her supervisory position was given to a lesser qualified male who was her assistant supervisor.

54.    The acts discussed throughout this Complaint affected the terms, conditions and/or privileges of Plaintiff Jones' employment when she was replaced by a lesser-qualified male.

55.    Defendant, through the conduct of its agents, has violated Plaintiff Jones' rights under Title VII.

56.    As a result of Defendant's actions, Plaintiff Jones has suffered harm, including but not limited to, loss of employment opportunities, compensation and other benefits and conditions of employment. Additionally, Plaintiff Jones has suffered injury including stress, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

**FOURTH CAUSE OF ACTION**
**Failure to Accommodate**
**as to All Plaintiffs**
**Pursuant to Title I of the Americans with Disabilities Act and Section 504 of the**
**Rehabilitation Act**

57.    Plaintiffs re-allege and incorporate by reference paragraph nos. 9-36 with the same force and effect as if fully set forth herein and further states as follows:

58.    Plaintiffs were qualified individuals under the ADA in that they were "individual[s] who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Furthermore, upon information and belief, Defendant was a recipient of federal financial assistance as it related to the continued operations of its business.

59.    More specifically, Plaintiff Walker and Plaintiff Williams were able to perform the essential functions of their positions but needed accommodations in the form of medical leave

10

and/or FMLA leave. Plaintiff Jones was able to perform the essential functions of her position as well, but she needed an accommodation in the form of being placed in a different position away from the problematic supervisor.

60.    All Plaintiffs made the Arc aware of their respective conditions and requests for accommodations. However, rather than attempt to accommodate any of the Plaintiffs, the Arc ultimately terminated each of their employments.

61.    Providing accommodations to any of these Plaintiffs would have caused no undue hardship on Defendant. As such, Defendant failed to accommodate Plaintiffs.

62.    Defendant is directly liable for the actions and/or inactions of its managers and agents.

63.    As a result of Defendant's actions, Plaintiffs have suffered harm, including but not limited to, loss of employment opportunities, compensation and other benefits and conditions of employment. Additionally, Plaintiffs have suffered injury including stress, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

**FIFTH CAUSE OF ACTION**
**Retaliation**
**as to All Plaintiffs**
**Pursuant to Title I of the Americans with Disabilities Act and Section 504 of the**
**Rehabilitation Act**

64.    Plaintiffs re-allege and incorporate by reference paragraph nos. 9-36 as if fully set forth herein and further states as follows:

65.    Plaintiffs were qualified individuals under the ADA in that they were "individual[s] who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Furthermore,

upon information and belief, Defendant was a recipient of federal financial assistance as it related to the continued operations of its business.

66.     More specifically, Plaintiff Walker and Plaintiff Williams were able to perform the essential functions of their positions but needed accommodations in the form of medical leave and/or FMLA leave. Plaintiff Jones was able to perform the essential functions of her position as well, but she needed an accommodation in the form of being placed in a different position away from the problematic supervisor.

67.     All Plaintiffs made the Arc aware of their respective conditions and requests for accommodations. However, rather than attempt to accommodate any of the Plaintiffs, the Arc ultimately terminated each of their employments, immediately after the accommodation requests were made. More specifically, when Plaintiff Jones made the Arc aware that her condition has caused heart attacks and that reporting to this problematic supervisor would trigger those heart attacks so she would need to be placed in a different position as an accommodation, the Arc told her there was nothing they could do and she was now terminated because of refusing to accept the demotion. Similarly, when Plaintiff Walker informed the Arc that she would need time off to recover from surgery due to her circulatory condition, on that same phone call, she was made aware that she would be receiving a letter. A week or two later, Plaintiff Walker received the termination letter. Finally, when Plaintiff Williams made the Arc aware that she would not be able to return to work until November 17th and then requested FMLA paperwork to that effect, just three (3) days later she received her termination letter.

68.     Such discipline and threats were in retaliation for Plaintiffs engaging in protected activity when they each informed the Arc of their respective medical conditions and requested

accommodations. Each termination was pretext. The real reasons Plaintiffs were terminated were their needs for accommodations.

69. Defendant is directly liable for the actions and/or inactions of its managers and agents.

70. As a result of Defendant's actions, Plaintiffs have suffered harm, including but not limited to, loss of employment opportunities, compensation and other benefits and conditions of employment. Additionally, Plaintiffs have suffered injury including stress, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully pray this Court will assume jurisdiction of this action and, after trial, provide relief as follows:

1. Issue a declaratory judgment that the employment practices, policies, procedures, conditions and customs that led to the discrimination and retaliation by Defendant is violative of the rights of Plaintiffs as secured by the ADA, Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, 42 U.S.C. § 2000e, et seq., the Civil Rights Act of 1991, and 42 U.S.C. § 1981.

2. Grant Plaintiff Jones a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys and those acting in concert with Defendant and at Defendant's request from continuing to violate Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended," 42 U.S.C. § 2000e, et seq., the Civil Rights Act of 1991, and 42 U.S.C. § 1981.

3. Enter an Order requiring Defendant to make Plaintiffs whole by awarding Plaintiffs back pay (plus interest), reinstatement or front pay in lieu thereof, compensation for loss of wages

and benefits, lost seniority, and pension benefits and nominal, compensatory and punitive damages.

4.      Plaintiffs further pray for such other and further relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees, and expenses incurred by this litigation.

5.      Plaintiffs have no plain, adequate, or complete remedy at law to redress the wrongs alleged in this suit, and this action for injunctive, declaratory and other relief, is the only means of securing adequate relief.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY
ON ALL ISSUES TRIABLE BY JURY**

Respectfully submitted,

Samuel Fisher
Sidney Jackson
*Attorneys for the Plaintiff*
**Wiggins, Childs, Pantazis, Fisher
& Goldfarb, LLC**
The Kress Building
301 Nineteenth Street North
Birmingham, Alabama 35203
sf@wigginschilds.com
sjackson@wigginschilds.com

**Notice of Lawsuit and Request for Waiver of Service to Be Sent by Certified Mail to the Following:**

**ARC of Eastern Elmore County**
RT 1, BOX 292 C,
TALLASSEE, AL 36078